IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

JAMES A. BOLLA,                    )    CIV. NO. 09-00165 SOM/LEK
                                   )
          Plaintiff,               )
                                   )    ORDER GRANTING IN PART AND
     vs.                           )    DENYING IN PART DEFENDANTS'
                                   )    MOTION TO SEAL CERTAIN
UNIVERSITY OF HAWAII;              )    EVIDENCE; ORDER GRANTING
DAVID McCLAIN;                     )    DEFENDANTS' MOTIONS FOR
VIRGINIA HINSHAW;                  )    SUMMARY JUDGMENT
JAMES DONOVAN;                     )
CARL CLAPP, and                    )
DOE DEFENDANTS 1 THROUGH 100,      )
                                   )
          Defendants.              )
_____   )

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO
        SEAL CERTAIN EVIDENCE; ORDER GRANTING
        DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

I.        INTRODUCTION.

          In 2004, Defendant University of Hawaii ("UH") hired

Plaintiff James A. Bolla to be the head coach of its women's

basketball program.  Bolla claims that he complained of gender

inequities between the men's and women's basketball programs at

UH and was retaliated against for doing so.  Bolla sues various

individual Defendants, asserting that they violated his First

Amendment rights.  Bolla also sues UH, asserting that it

retaliated against him in violation of Title IX.

          The individual Defendants move for summary judgment.

This court grants that motion, because Bolla's alleged complaints

about Title IX violations were not protected by the First

Amendment, because the individual Defendants have qualified immunity with respect to those claims, and because Defendants David McClain and Virginia Hinshaw cannot be liable, having not personally participated in the alleged retaliation.

UH also moves for summary judgment.  This court grants that motion because Bolla fails to raise a genuine issue of fact as to whether UH's proffered reasons for terminating him were pretextual.

Before reaching the merits of the motions for summary judgment, the court addresses Defendants' motion to seal certain exhibits.  The court grants that motion in part and denies it in part.

II.      MOTION TO SEAL.

Defendants move to seal certain exhibits containing confidential information.  See Ex Parte Motion for Leave to File Exhibits Under Seal, Sept. 1, 2010, ECF No. 85.  On September 2, 2010, this court issued a minute order, noting that, when evaluating such motions under Local Rule 83.12, the court makes every effort to seal only the confidential information and to allow filings to be open to the public to the fullest extent possible.  The court ordered the parties to meet and confer about proposed redactions and asked the parties to submit proposed redactions.  See Minute Order, Sept. 2, 2010, ECF No. 86.

On September 10, 2010, Defendants filed proposed redacted exhibits.  <u>See</u> Letter from John-Anderson L. Meyer to this court, Sept. 10, 2010, ECF No. 89.  On September 17, 2010, Bolla filed general objections to the unsealing of any document. Bolla's general objections did not address why any particular document should be sealed.  <u>See</u> Plaintiff's objection to unsealing of documents, Sept. 17, 2010, ECF No. 90.

Local Rule 83.12 provides a detailed structure for filing confidential information under seal.  Defendants have made great efforts to comply with that rule, demonstrating "compelling reasons" to seal the names of student-athletes and coaches who participated in the events underlying the complaints against Bolla.  The proposed redactions of the names maintain those individuals' rights to medical privacy and spare those individuals from the public embarrassment of being the alleged victims of Bolla's actions or the subject of possible discipline by UH.  In other words, the redactions of the names prevents the use of court files for improper purposes, such as promoting public scandal.  Bolla's general objections about his own privacy rights are too vague to be persuasive.  The court concludes that Defendants' proposed redactions of names satisfy the "compelling reasons" test and maintain the confidentiality of the information, while allowing the public access to the substance of

3

the information.  See Kamakana v. City & County of Honolulu, 447 F.3d 1172, 1178-79 (9th Cir. 2006).

Defendants' motion regarding the sealing of documents is granted in part and denied in part.  Defendants are ordered to file in the public file the redacted documents submitted to the court for review.  Defendants, however, shall make further redactions.  In this community, which does not have professional sports teams, college athletics are closely followed, and student athletes are often easily identifiable by fans.  Because the identity of persons involved with UH's women's basketball program may easily be determined even from their initials, Defendants are ordered to redact initials as well.  Defendants are further ordered to file a single envelope under seal that contains all of the unredacted documents corresponding to the redacted documents that are filed in the public file.  Defendants are also ordered to file in the public files all documents that contain no redacted information, including such documents previously proposed to be filed under seal.

III.      MOTION FOR SUMMARY JUDGMENT.

A.     STANDARD OF REVIEW.

Summary judgment shall be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(c). One of the principal purposes of summary judgment is to identify and dispose of factually unsupported claims and defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). Accordingly, "[o]nly admissible evidence may be considered in deciding a motion for summary judgment." Miller v. Glenn Miller Prods., Inc., 454 F.3d 975, 988 (9th Cir. 2006). Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial. See Celotex, 477 U.S. at 323. A moving party has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000). The burden initially falls on the moving party to identify for the court "those portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323); accord Miller, 454 F.3d at 987. "A fact is material if it could affect the outcome of the suit under the governing substantive law." Miller, 454 F.3d at 987.

When the moving party fails to carry its initial burden of production, "the nonmoving party has no obligation to produce anything." In such a case, the nonmoving party may defeat the motion for summary judgment without producing anything. Nissan

<u>Fire</u>, 210 F.3d at 1102-03.  On the other hand, when the moving party meets its initial burden on a summary judgment motion, the "burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial." <u>Miller</u>, 454 F.3d at 987.  This means that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986) (footnote omitted).  The nonmoving party may not rely on the mere allegations in the pleadings and instead "must set forth specific facts showing that there is a genuine issue for trial." <u>Porter v. Cal. Dep't of Corr.</u>, 419 F.3d 885, 891 (9th Cir. 2005) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986)).   "A genuine dispute arises if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>California v. Campbell</u>, 319 F.3d 1161, 1166 (9th Cir. 2003); <u>Addisu v. Fred Meyer, Inc.</u>, 198 F.3d 1130, 1134 (9th Cir. 2000) ("There must be enough doubt for a 'reasonable trier of fact' to find for plaintiffs in order to defeat the summary judgment motion.").

On a summary judgment motion, "the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor." <u>Miller</u>, 454 F.3d at 988 (quotations and brackets omitted).

B.   FACTUAL BACKGROUND.

In 2004, UH hired Bolla to be the head coach of its women's basketball program.  See Decl. of James A. Bolla ¶ 2, Nov. 9. 2010, ECF No. 107.  In July 2007, Bolla's contract was extended for an additional four years, to June 30, 2011.  Id. ¶ 3.

In March 2008, UH hired Defendant James Donovan as its new athletic director.  See Decl. of James Donovan ¶ 1, Aug. 31, 2010, ECF No. 84-2.  In March 2008, immediately after starting as the new athletic director, Donovan met with the head coaches of the various sports to discuss what they needed to make their programs successful.  Id. ¶ 3.  On or about March 25, 2008, Donovan met with Bolla.  Id. ¶ 5.  Bolla says he told Donovan at this meeting that he wanted the women's basketball program to be put on equal footing with the men's basketball program, in compliance with Title IX.  See Bolla Decl. ¶¶ 7-8.  Bolla wanted things like a secretary, more coaches, increased budget, the ability to use buses instead of cars, and summer school for the student-athletes.  See Exs. C-1 and C-2, ECF Nos. 84-11 and 84-12.  Donovan disputes that, at the March 2008 meeting, Bolla voiced Title IX complaints.  See Donovan Decl. ¶ 10; see also Decl. of Jeannie Lee ¶¶ 1, 2, 5, Aug. 31, 2010, ECF No. 84-3 (Lee was Donovan's executive assistant, was present at the meeting,

and says that Bolla did not raise Title IX concerns at the meeting).

Donovan says that, shortly after his meeting with Bolla, he began hearing complaints from student-athletes about Bolla's conduct as a coach.  See Donovan Decl. ¶ 12.  On April 30, 2008, Donovan appointed UH human resources specialists to do a fact-finding investigation regarding those complaints.  Id.; Ex. E-A.  Donovan says he told Bolla about the investigation and Bolla's duty to cooperate.  See Donovan Decl. ¶ 15; Ex. E-B. Bolla says that he was told of the investigation by Defendant Carl Clapp, who was acting on Donovan's behalf.  See Bolla Decl. ¶ 18.

On July 30, 2008, the specialists submitted a report to Donovan about the complaints.  See Donovan Decl. ¶ 17; Ex. E. This report contained six letters from student-athletes detailing their complaints against Bolla and noted that some of these complaints had been made to the previous athletic director's administration but had not been responded to.  See Ex. E.  The report included some extremely complimentary descriptions of Bolla.  See id.  Some of those complimentary descriptions indicated that the student-athlete complaints were really about Bolla's coaching style, which had a history of being effective. Id.

On August 22, 2008, after reviewing the fact-finding report, Donovan issued a written reprimand to Bolla.  See Ex. H.

8

Among other things, Donovan reviewed Bolla's offer to change a student's scholarship from an athletic scholarship to a manager's scholarship based on the student's pregnancy.  Donovan informed Bolla that, even if Bolla was trying to help the student, a coach could not make such a change and that Bolla should have left the matter to the student.  Id.  Donovan cautioned Bolla against further unauthorized discussions and reviews of student-athletes' medical conditions.  Id.  Donovan reprimanded Bolla for inappropriate remarks concerning sexual orientation and for threatening to kick a student-athlete off the team for something her parent had said.  Id.  Donovan said that, if Bolla entered the women's locker room without first checking to see whether everyone was dressed, that conduct was also improper.  Id.  Finally, Bolla was reprimanded for "verbal abuse and manipulation" of student-athletes.  Id.  Donovan told Bolla "that any further inappropriate and unprofessional behavior and conduct will not be tolerated.  If such violations ever occur again, I will immediately take appropriate corrective action, up to and including discharge."  Id.

In January 2009, Bolla was interviewed by Dave Reardon, a reporter for a daily Honolulu newspaper.  Bolla says that he spoke to Reardon in his capacity as the women's head basketball coach at UH.  See Plaintiff's Answers to All Defendants' First Request for Admissions ¶ 9, Sept. 1, 2010, ECF. No. 84-14.  Bolla

9

says that, in answer to Reardon's questions, he complained about UH's failure to provide gender equity in the women's basketball program.  See Bolla Decl. ¶ 58.  However, Reardon's published articles contained no mention of that.  Those articles instead described how the women's basketball team had lost its previous game not because of lack of effort, but because of missed shots.  The article reported that Bolla was critical of members of the public who did not attend games but who nevertheless commented on the team.  See Exs. I-1 and I-2, ECF Nos. 84-21 and 84-22.

In January 27, 2009, Donovan reprimanded Bolla for his criticism about the public comments.  Bolla was told not to say anything further that could be construed as inflammatory to the general public or ultimately derogatory about the UH athletics department.  See Ex. J.

In early 2009, Donovan received a complaint from a student-athlete who said that, during a 2008 practice, Bolla had told her, "If you are not in the right place, I'm gonna put my foot up your ass."  See Donovan Decl. ¶ 26.  Bolla disputes having said "I'm gonna put my foot up your ass," stating instead that he told her he was going to "stick it where the sun don't shine."  See Plaintiff's Answers to All Defendants' First Request for Admissions ¶ 5, Sept. 1, 2010, ECF. No. 84-14.  When the student in a later play was not in the right place, the student said that Bolla kicked her in the buttocks hard enough to move

her several feet.  <u>See</u> Donovan Decl. ¶ 26.  Bolla disputes having

kicked the student, but does admit to having put his foot on her,

causing her eyes to tear up.  <u>See</u> Plaintiff's Answers to All

Defendants' First Request for Admissions ¶¶ 2-3; Bolla Decl. ¶ 59

(indicating that he "tapped her buttocks" with his right foot),

¶ 61 (indicating that he "gently hit her buttocks").

On February 6, 2009, Donovan appointed UH human

resource specialists to perform another investigation.  On

February 9, 2009, without yet having the written report, Donovan

suspended Bolla with pay.  <u>See</u> Donovan Decl. ¶¶ 28, 30.

On or about March 5, 2009, the specialists issued a

report describing the alleged kick and additionally noting that,

during the course of the investigation, they had learned that

Bolla had told other student athletes: "If that were me, I would

have broken your fucking arm" and "You can take that one-handed

pass and shove it up your ass."  Bolla was also said to have told

a student that she needed to go to a psychologist and another

that she should be tested for Attention Deficit Disorder.  <u>See</u>

Ex. K.

Donovan says that he believed the 2009 report was

accurate.  On or about March 13, 2009, Donovan wrote to Bolla to

say that, based on the report's summary of Bolla's statements and

the "kick," he was concluding that Bolla had acted

unprofessionally, inappropriately, and even violently.  According

to Donovan, because Bolla had previously been reprimanded and told that further violations would result in appropriate corrective actions, Donovan terminated Bolla.  See Ex. L; Donovan Decl. ¶¶ 35, 42.  Donovan said that the termination decision was his alone.  Id. ¶ 43.

Bolla says that he has been punished more severely than other coaches for similar conduct.  Bolla says that, at a preseason media day, UH's football coach implied that another school's players were "faggots."  Bolla says that this coach's punishments were only a suspension and a pay reduction.  See Bolla Decl. ¶ 27.  Bolla says that this coach threw a projector, a computer, and a water jug in a half-time speech, and, later in the same season in which that coach made the "faggot" comment, swung a power chainsaw in a pregame speech, but was not reprimanded.  Id. ¶ 26.

C.    ANALYSIS.

Given the October 9, 2009, order and the October 26, 2009, stipulation, the only claims remaining are Count I (seeking injunctive relief), Count II (Title IX retaliation against UH only), and Count III (a § 1983 claim against the individual Defendants in their personal capacities for retaliation based on Bolla's exercise of First Amendment rights).

1.  Summary Judgment is Granted in Favor of the
    <u>Individual Defendants on the § 1983 Claim.</u>

    a.  <u>Bolla's Speech was Not Protected.</u>

Because Defendants argue that the First Amendment issue
controls the Title IX issue, the court starts by addressing the
First Amendment issue.  Count III alleges that the individual
Defendants (McClain, Hinshaw, Clapp, and Donovan) violated 42
U.S.C. § 1983, which provides in relevant part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of
> any State or Territory or the District of
> Columbia, subjects, or causes to be
> subjected, any citizen of the United States
> or other person within the jurisdiction
> thereof to the deprivation of any rights,
> privileges, or immunities secured by the
> Constitution and laws, shall be liable to the
> party injured in an action at law, suit in
> equity . . . .

"Section 1983 imposes two essential proof requirements
upon a claimant: 1) that a person acting under color of state law
committed the conduct at issue, and 2) that the conduct deprived
the claimant of some right, privilege or immunity protected by
the Constitution or laws of the United States."  <u>Leer v. Murphy</u>,
844 F.2d 628, 632-33 (9th Cir. 1988).

Bolla claims that the individual Defendants violated
his First Amendment rights by retaliating against him for his
exercise of his Title IX rights.  <u>See</u> <u>Mendocino Environ. Ctr. v.
Mendocino County</u>, 192 F.3d 1283, 1300 (9th Cir. 199) (stating
that, to demonstrate a First Amendment violation, a plaintiff

must demonstrate that a defendant "deterred or chilled" the plaintiff's speech and that such deterrence was a substantial or motivating factor in the defendant's conduct).  In other words, Bolla says he was retaliated against in violation of § 1983 because he complained about gender inequities between the men's and women's basketball teams.  See Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989) (holding that a free speech retaliation claim is cognizable under § 1983).  Count III fails because Bolla's complaints do not qualify as speech protected by the First Amendment.

In Garcetti v. Ceballos, 547 U.S. 410 (2006), the Supreme Court ruled that the First Amendment does not protect government employees from discipline based on speech made pursuant to the employee's official duties.  Richard Ceballos, a calendar deputy for the district attorney's office in Los Angeles, was told by a defense attorney that an affidavit used to obtain a search warrant had been inaccurate.  Id. at 413. Ceballos determined that the affidavit had indeed contained "serious misrepresentations."  Id. at 414.  Ceballos then prepared a memorandum that recommended dismissal of the case. Id.  Ceballos claimed that he suffered retaliation for his actions.

The Supreme Court rejected Ceballos's First Amendment claim, ruling that, "when public employees make statements

14

pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." Id. at 421.  Because Ceballos wrote his memorandum as part of his duties as a calendar clerk, the Supreme Court reasoned that it was written pursuant to his official duties and was therefore unprotected by the First Amendment.  Id.  The Supreme Court said that the inquiry into whether an employee is acting pursuant to official duties is a "practical one," noting that "the listing of a given task in an employee's written job description is neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the employee's professional duties for First Amendment purposes."  Id. at 425.

Bolla claims to have exercised rights under Title IX when he met with Donovan in March 2008, allegedly telling Donovan about gender inequities, and when he later talked with Reardon, a member of the press.  Bolla claims to have suffered retaliation for his speech.  However, the record establishes that the speech on which Bolla premises his claim was made in his official capacity.

In March 2008, Donovan, having just been appointed athletic director, met with the head coaches of each sport to ask them what they needed to be successful.  Bolla says that he complained to Donovan that the women's basketball team was being

15

treated less favorably than the men's basketball team.  That speech was not protected by the First Amendment, as Bolla conceded at the hearing that he was making those statements in his official capacity as head coach of the women's basketball team.  Bolla was at the meeting with UH's athletic director only because Bolla was the head coach.  He had the opportunity to make his alleged statements only because he was a head coach meeting with the new athletic director.  Like Ceballos's memorandum discussed above, Bolla's speech was part of his official duties and is therefore not protected by the First Amendment.

Similarly, Bolla's statements to Reardon are not protected by the First Amendment, as Bolla admits that those statements were made in his official capacity as head coach of the women's basketball team.

Given the lack of First Amendment protection for Bolla's speech, Count III does not state a § 1983 claim.

        b.    The Individual Defendants Have Qualified Immunity with Respect to the § 1983 Claims.

Another way to express the failing in Count III is to say that the individual Defendants have qualified immunity with respect to Count III.

"[G]overnment officials performing discretionary functions [are entitled to] a qualified immunity, shielding them

from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." Anderson v. Creighton, 483 U.S. 635, 638 (1987).  The doctrine of qualified immunity protects government officials from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 129 S. Ct. 808, 815 (2009) (quotations omitted).  Although the Supreme Court earlier laid out a two-step sequence for a court to follow in resolving a government official's qualified immunity claim, that sequence is no longer mandatory. Id. at 817.  This court may therefore exercise its "sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Id. at 818; Bryan v. MacPherson, __ F.3d __, 2010 WL 4925422, *14 (9th Cir. Nov. 30, 2010).

Under one prong, this court must decide whether the facts that Bolla alleges as the basis for his § 1983 claim make out a violation of a constitutional right. Pearson, 129 S. Ct. at 815-16; MacPherson, 608 F.3d at 619 ("taking the facts in the light most favorable to the non-moving party, the first prong examines whether the officer's conduct violated a constitutional right").  Under the other prong, this court must decide whether

the right at issue was "clearly established at the time of the
defendant's alleged misconduct."  <u>Pearson</u>, 129 S. Ct. at 815-16;
<u>MacPherson</u>, 608 F.3d at 619 (asking whether the right was
"clearly established in light of the specific context of the
case").

     As discussed above, Bolla's factual allegations fail to
"make out a violation of a constitutional right."  Moreover,
given <u>Garcetti</u>, Bolla fails to show that his alleged First
Amendment rights were "clearly established" at the time of the
alleged misconduct.  It is far from clear that any right head
coaches at universities have to comment and/or complain in their
official capacities about perceived Title IX violations is
protected by the First Amendment.  Accordingly, the individual
Defendants have qualified immunity with respect to a § 1983 claim
premised on an alleged First Amendment violation.

     Pointing to Hawaii's Whistleblower's Protection Act,
sections § 378-61 and/or -62 of the Hawaii Revised Statutes,
Bolla argues that the individual Defendants lack qualified
immunity with respect to his § 1983 claim.  This court disagrees.
Bolla's Hawaii Whistleblower's Protection Act claim has already
been dismissed by this court and cannot form the basis of a claim
that the individual Defendants lack qualified immunity.  As the
Ninth Circuit stated in <u>Doe v. Petaluma City School District</u>, 54

F.3d 1447, 1451 (9th Cir. 1995), in deciding questions of qualified immunity, this court "must focus on the right [the plaintiff] alleges was violated."  Just as the Ninth Circuit concluded in that case that Title VII could not serve as the basis for a clearly established right for purposes of a sexual-harassment claim brought under the similarly worded Title IX, Hawaii Whistleblower's Protection Act cannot form the basis of a clearly established right for purposes of the asserted First Amendment violation.  See id. at 1450-51.

> c.   McClain and Hinshaw Did Not Participate in Bolla's Termination.

Defendant David McClain and Defendant Virginia Hinshaw have yet another ground on which to challenge the viability of Count III.  There is no evidence that either played any actual role in Bolla's termination, and Bolla fails to establish supervisor liability for either.

McClain was the President of the University of Hawai`i system, overseeing 10,000 employees.  See Declaration of David McClain ¶¶ 1-3, Aug. 28, 2010, ECF No. 84-6.  McClain says he "had no personal participation in the ultimate decision to terminate James Bolla's . . . employment and did not direct the decision to terminate his employment."  Id. ¶ 5.

Hinshaw is Chancellor of UH's Mānoa campus, overseeing 8,000 employees.  See Declaration of Virginia Hinshaw ¶¶ 1-2, Aug. 31, 2010, ECF No. 84-5.  Like McClain, Hinshaw did not

19

personally participate in the decision to terminate Bolla's
employment.  <u>Id.</u> ¶ 4.

Donovan says that he alone made the decision to
terminate Bolla, not any of the other individual Defendants.  <u>See</u>
Donovan Decl. ¶ 43.

A supervisor may be liable under § 1983 only when he or
she personally participated in a constitutional deprivation, or
when there is a sufficient causal connection between the
supervisor's wrongful conduct and the constitutional violation.
<u>See</u> <u>Edgerly v. City & County of San Francisco</u>, 599 F.3d 946, 961
(9th Cir. 2010); <u>Hansen v. Black</u>, 885 F.2d 642, 646 (9th Cir.
1989); <u>Ybarra v. Reno Thunderbird Mobile Home Village</u>, 723 F.2d
675, 680 (9th Cir. 1984) ("A supervisor cannot be held personally
liable under § 1983 for the constitutional deprivations caused by
his subordinates, absent his participation or direction in the
deprivation").  Supervisory officials are not vicariously liable
for the actions of their subordinates.  <u>Hansen</u>, 828 F.2d at 645-
46 (citing <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 479
(1986)).  Because the only evidence before this court indicates
that McClain and Hinshaw did not personally participate in the
decision to terminate Bolla, they are not liable for that
termination under § 1983.

2.    Summary Judgment is Granted to UH on the
Title IX Retaliation Claims.

Count II alleges that UH violated Title IX by

retaliating against Bolla for the exercise of his rights under

Title IX, 20 U.S.C. § 1681.  Title IX provides in relevant part:

> (a) No person in the United States shall, on
> the basis of sex, be excluded from
> participation in, be denied the benefits of,
> or be subjected to discrimination under any
> education program or activity receiving
> Federal financial assistance, . . . .

The Supreme Court has held that an implied cause of action exists

under Title IX for retaliation.  See Jackson v. Birmingham Bd. of

Educ., 544 U.S. 167, 173 (2005) ("Retaliation against a person

because that person has complained of sex discrimination is

another form of intentional sex discrimination encompassed by

Title IX's private cause of action.").

Although the Ninth Circuit has not addressed the issue

of how Title IX claims are to be handled, most courts look to

Title VII when reviewing claims under Title IX.  That is, the

relevant analysis to be followed in connection with alleged

employment discrimination on the basis of sex under Title IX is

similar to that followed in Title VII.  See, e.g., Johnson v.

Baptist Med. Ctr., 97 F.3d 1070, 1072 (8th Cir. 1996) ("when a

plaintiff complains of discrimination with regard to conditions

of employment in an institution of higher learning, the method of

evaluating Title IX gender discrimination claims is the same as

those in a Title VII case."); Murray v. N.Y. Univ. College of
Dentistry, 57 F.3d 243, 248 (2d Cir. 1995) ("In reviewing claims
of discrimination brought under Title IX by employees, whether
for sexual harassment or retaliation, courts have generally
adopted the same legal standards that are applied to such claims
under Title VII."); Lipsett v. Univ. of Puerto Rico, 864 F.2d
881, 896-99 (1st Cir. 1988) (applying Title VII burden-shifting
analysis to Title IX claim); Emeldi v. Univ. of Or., 2010 WL
2330190, *2 (D. Or., June 4, 2010) ("Title IX should be analyzed
under the same burden shifting scheme recognized for Title VII
cases."); Stucky v. Haw., 2008 WL 214944, *17 (D. Haw., Jan. 25,
2008) ("Title VII principles guide the resolution of Title IX
discrimination claims.").  Those cases are persuasive to this
court, which applies the Title VII framework to this Title IX
case.

        Accordingly, to survive summary judgment on the
Title IX claim, Bolla must first establish a prima facie
discrimination case.  See, e.g., Anthoine v. N. Central Counties
Consortium, 605 F.3d 740, 753 (9th Cir. 2010).  If Bolla makes
out a prima facie case, the burden shifts to UH to provide
nondiscriminatory reasons for the adverse employment action--
Bolla's termination.  If UH does so, the prima facie case "drops
out of the picture," and this court evaluates the evidence to
determine whether a reasonable jury could conclude that UH

discriminated against Bolla.  See Anthoine, 605 F.3d at 753.  At this point, Bolla may defeat summary judgment by offering direct and/or circumstantial evidence that a discriminatory reason more likely motivated the employer, or that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable.  See id.  When the evidence on which a plaintiff relies is direct, little evidence is required to survive a summary judgment motion.  EEOC v. Boeing Co., 577 F.3d 1044, 1049 (9th Cir. 2009).  However, when the evidence on which a plaintiff relies is circumstantial, "that evidence must be specific and substantial to defeat the employer's motion for summary judgment."  Anthoine, 605 F.3d at 753 (quoting EEOC v. Boeing Co., 577 F.3d 1044, 1049 (9th Cir. 2009)).  Bolla may not defeat this motion for summary judgment merely by denying the credibility of UH's proffered reason for the challenged employment action.  See id.

          a.    Prima Facie Case.

For Bolla to establish a prima facie case of retaliation, he must show that: (1) he engaged in protected activity; (2) he was thereafter subjected to an adverse action; and (3) a causal link exists between the protected activity and the adverse action.  See Wallis v. J.R. Simplot Co., 26 F.3d 885, 891 (9th Cir. 1994).  On this motion for summary judgment, the requisite degree of proof necessary to establish a prima facie

case is "minimal."  See Cordova v. State Farm Ins. Cos., 124 F.3d 1145, 1148 (9th Cir. 1997) (discussing prima facie case in Title VII context).  The Ninth Circuit notes that a plaintiff makes a prima facie showing even if his or her case is "weak." Costa v. Desert Palace, Inc., 299 F.3d 838, 855 (9th Cir. 2002).

A question of fact exists as to whether Bolla engaged in a protected activity under Title IX.  Bolla says that, when he met with Donovan in March 2008, he complained about gender inequities for purposes of Title IX.  Donovan disagrees, indicating that they only talked about Bolla's wish list for what could make his program more successful.  Because this is a motion for summary judgment, the court accepts Bolla's version of the facts for purposes of this motion.  The court therefore assumes that Bolla complained about Title IX violations in his March 2008 conversation with Donovan.

Bolla also claims to have complained about Title IX violations to a reporter in January 2009.  The court assumes this to be true, even though there is no evidence that Defendants even knew of these alleged statements, as what was published in the paper did not address this subject.

Bolla was ultimately terminated.  Bolla relies on the temporal closeness of his allege Title IX comments to his termination to demonstrate causation.  Bolla makes out a sufficiently close connection between his alleged Title IX

24

complaints and his termination to satisfy his minimal prima facie burden.  Immediately after talking with Donovan in March 2008, Donovan asked for a fact-finding report as to allegations made by student-athletes, beginning the lengthy process that led to Bolla's official reprimand.  Bolla says that, in January 2009, he talked to a reporter about the alleged Title IX violations.  Soon after that, Donovan asked a fact-finding body to look into further allegations made by a student-athlete.  This fact-finding body issued a report that Donovan says he relied on in terminating Bolla.

The court rejects UH's argument that Bolla did not exercise protected activity when, in his official capacity as head coach of the team, he allegedly complained of Title IX violations.  In making this argument, UH relies on Atkinson v. Lafayette College, 653 F. Supp. 2d 581 (E.D. Pa. 2009), which extended the Supreme Court's Garcetti decision beyond the First Amendment context.  The district court in Atkinson applied Garcetti in a Title IX case to bar a claim of retaliation based on speech made in the employee's official capacity.  See id. at 596.  The court is not persuaded by Atkinson, which did not examine the Supreme Court's Jackson decision.

In Jackson, 544 U.S. 167 (2005), the Supreme Court recognized a claim of retaliation in a Title IX case involving a high school girl's basketball coach who had complained to his

supervisor that the boy's basketball team was receiving more funding than the girl's team.  Jackson's complaint had alleged that he then began to receive negative evaluations and was removed as the coach in retaliation for those complaints.  Id. at 171-72.  The district court dismissed the Title IX retaliation claim on the ground that Title IX does not prohibit retaliation. The Eleventh Circuit affirmed.  Id. at 171.  The Supreme Court reversed, ruling that Jackson could assert a retaliation claim under Title IX.  In so ruling, the Supreme Court reasoned that, unless individuals were protected from retaliation, they would not report discrimination, and Title IX's "enforcement scheme would be subverted."  Id. at 181.  The Supreme Court recognized that teachers and coaches were often in the best position to advocate for gender equity for students because they could detect discrimination and bring it to the attention of administrators. Id.  The Supreme Court therefore allowed Jackson's Title IX retaliation claim to go forward.

The present case involves factual allegations nearly identical to those in Jackson.  This court therefore rules that Bolla alleges a Title IX violation based on having allegedly been terminated because of his complaints that the women's basketball team was treated less favorably than the men's basketball team. Given Jackson, this court is not persuaded by UH's argument that, having allegedly made Title IX complaints as the head coach of

the women's basketball team that are not protected by the First Amendment, Bolla lacks a Title IX retaliation claim.

> b.  Legitimate, Nondiscriminatory Reasons
>     for the Adverse Employment Action.

There is no question that UH has articulated legitimate, nondiscriminatory reasons for terminating Bolla. After being reprimanded and warned about future unprofessional conduct, Bolla told a team member either "I'm gonna put my foot up your ass" or "[I'm going to] stick it where the sun don't shine," before either "kicking" or "nudging" her with his foot for not being in proper position.  UH had evidence that Bolla told other student-athletes, "If that were me, I would have broken your fucking arm" and "You can take that one-handed pass and shove it up your ass."  See Bolla Decl. ¶¶ 59-61, 64, 65. These comments and actions qualify as nondiscriminatory reasons for Bolla's termination.

> c.  Pretext

Calling Bolla's declaration "self-serving," UH argues that it should be disregarded and stricken, leaving Bolla with no evidence of pretext.  This court declines to disregard Bolla's declaration.  This court may disregard "sham" affidavits and declarations when they contradict prior sworn testimony.  See, e.g., Leslie v. Grupo ICA, 198 F.3d 1152, 1157 (9th Cir. 1999). This court may also disregard conclusory, self-serving statements in affidavits and declarations when those statements are "lacking

detailed facts and supporting evidence." <u>F.T.C. v. Publ'g</u>

<u>Clearing House, Inc.</u>, 104 F.3d 1168, 1171 (9th Cir. 1997).

Neither reason justifies disregarding Bolla's declaration.  Bolla

did not simply state that UH's stated reason for terminating him

was pretextual.  Such a statement, by itself, would have been

insufficient to raise a genuine issue of fact as to pretext.

Bolla's declaration sets forth a sufficient factual basis to be

considered when evaluating UH's motion for summary judgment,

although, as explained below, the factual detail is not

sufficient to avoid summary judgment on the issue of pretext.

UH next argues that this court should disregard hearsay

statements contained in Bolla's declaration concerning newspaper

reports of "motivational speeches" by another coach.  This court

agrees that, under Rule 56(c)(4) of the Federal Rules of Civil

Procedure, affidavits and declarations in support of or in

opposition to a motion for summary judgment must be made on

personal knowledge.  The court declines to disregard Bolla's

declaration to the extent it relies on newspaper articles for the

factual assertions concerning what another coach said or did.

That is because this court is not persuaded by Bolla's assertion

of pretext even if this court assumes the truth of the newspaper

articles pursuant to <u>Fraser v. Goodale</u>, 342 F.3d 1032, 1036 (9th

Cir. 2003), which allows this court to focus on the admissibility

of the contents of evidence rather than its form.  The

circumstantial evidence in the newspaper reports, combined with the other circumstantial evidence Bolla relies on, is not sufficiently "specific and substantial" to defeat UH's motion for summary judgment.  See Anthoine, 605 F.3d at 753.  The court is not here ruling that newspaper articles may be considered in adjudicating a summary judgment motion, but is instead noting that Bolla fails to show pretext even assuming the truth of the newspaper reports.

Donovan says that he terminated Bolla because Bolla was verbally abusive, and because Donovan concluded that Bolla had kicked a member of his team.  Bolla concedes that he told a member of the team that, if she were out of position on another play, Bolla would stick his foot where the sun did not shine.  Bolla also concedes that he subsequently tapped the buttocks of the team member's behind, nudging her into the proper position, which made her tear up.  See Bolla Decl. ¶¶ 59-61.  Bolla further admits to telling a team member, "If it were me, I would have broken your fucking arm," to make the point that what she was doing could have resulted in serious injury to her.  Id. ¶ 64.  He further concedes that he told another team member that she could take her one-handed pass and stick it up her ass.  See id. ¶ 65.  Despite conceding these actions and statements, Bolla maintains that the real reason he was terminated is that Donovan

was retaliating against Bolla for Bolla's assertion of rights under Title IX.

Bolla's factual concessions make it clear that he is not attempting to establish pretext by showing that Donovan's proffered explanation for his termination is unbelievable because it is internally inconsistent.  Bolla is instead attempting to show pretext by offering circumstantial evidence that the proffered reasons were on their face not believable and/or that a discriminatory reason more likely motivated Donovan's decision to terminate him.  See Anthoine, 605 F.3d at 753.  However, the circumstantial evidence on which Bolla relies is not sufficiently "specific and substantial" to create an issue of fact using this method of establishing pretext.  Id.

Bolla contends that Donovan wanted to punish Bolla allegedly from the time Bolla made his first Title IX complaint in March 2008.  Bolla says that, after he made that complaint, Donovan started a series of actions adverse to Bolla, beginning with an investigation of complaints that had been made to the previous athletic director, ultimately leading to the August 22, 2008, written reprimand.  Donovan then reprimanded Bolla for making statements to the press.  Donovan said he ultimately fired Bolla for having been verbally abusive and having kicked a team member.  Although Bolla does not dispute having done the acts for which he was reprimanded and terminated, he does dispute the

severity of his conduct.  Bolla says that, given what he says was his actual conduct, termination was an over-reaction.  In claiming that his punishment was disproportionate and therefore the result of pretext, Bolla compares his situation to that of another UH coach.  But that other coach was not similarly situated to Bolla.

Assuming that the newspaper accounts on which Bolla relies are correct, the other coach, the men's football coach, said that another team had done a little "faggot" dance.  Bolla says that the men's football coach was only subjected to suspension and a pay reduction as a result.  This same coach, at some unidentified time, reportedly threw objects during a half-time speech in the locker room.  This coach also apparently swung a power chain saw in the locker room during a pre-game "motivational speech" after he had been suspended and had his pay reduced.  Noting that this coach was not terminated, Bolla argues that this unequal treatment raises an issue of fact as to whether UH's reasons for terminating Bolla were pretextual.  However, the court finds significant the absence of any evidence that any student felt threatened or intimidated by the men's football coach's reported actions or that any student complained about those actions to Donovan or any other member of UH management. Donovan had a report not just describing Bolla's alleged conduct but also cataloging complaints about that conduct.  Even if the

football coach's reported conduct were equivalent to Bolla's
conduct, there is no evidence that the audiences' reactions to
the comments were equivalent.

In addition, Bolla was reprimanded and warned by
Donovan concerning his abusive language.  Bolla presents no
evidence that the other coach's reported conduct followed a prior
reprimand or warning that the other coach might be terminated if
his inappropriate language continued.  Nor is there any evidence
that the football coach's "motivational speeches" in any way
scared, offended, or intimidated a student-athlete, or were even
directed to or in the general vicinity of any particular student-
athlete or targeted a particular individual.  The evidence
certainly fails to establish that the football coach kicked, hit,
or otherwise improperly touched any student-athlete.  Thus, Bolla
does not identify an issue of fact as to whether UH's stated
reasons for terminating him were actually a pretext for
discrimination based on allegedly different treatment of the
men's football coach.  There is simply no basis on which this
court can conclude that the other coach was similarly situated.

This court recognizes that "similarly situated"
employees are more often discussed in the context of analyzing
prima facie cases than in the context of establishing pretext.
However, Bolla makes UH's different treatment of the football
coach the crux of his pretext argument.  That is, Bolla says that

UH's failure to fire the football coach is evidence that UH did not really care about harsh or inappropriate comments or actions at all.  To evaluate this argument, this court is compelled to examine whether the coaches were similarly situated.  If they are not, UH's different treatment of the football coach could hardly establish a pretextual reason for firing Bolla.  If, for example, an employee was fired for having punched someone, that employee could not establish pretext by saying that a colleague was not fired for having used racial epithets.

This court stresses that it is not saying that the coach of a men's team should be given more latitude than the coach of a women's team just because of the gender difference. But if two coaches are to be compared with respect to a school's reaction to allegedly offensive conduct by both, then a plaintiff claiming pretext must show comparability in the cited conduct. For all this court knows, male football players were as offended by their coach's actions as Bolla's players were offended by Bolla's actions, but the record gives no indication that any offense at all was taken by any football team member.  Bolla had the burden of raising a genuine issue of fact as to pretext. That is, Bolla had the burden of showing how he would establish that UH's proffered reasons were pretextual if the matter went to trial.  Bolla's reliance on UH's treatment of the football coach is not supported by evidence that the football coach's conduct

offended student-athletes.  Given this lack of evidence, this court does not have a basis for deeming that conduct as comparable to Bolla's.

IV.        <u>CONCLUSION.</u>

As set forth above, the motion to seal is granted in part and denied in part.  The court grants the individual Defendants' and UH's motion for summary judgment.  Because all of the substantive claims have been disposed of in Defendants' favor, Bolla's claim for reinstatement (Count I) fails as well. The Clerk of Court is directed to enter judgment in favor of Defendants and to close this case.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii,  December 16, 2010.



<u>/s/ Susan Oki Mollway</u>
Susan Oki Mollway
Chief United States District Judge

<u>Bolla v. University of Hawaii, et al.</u>, Civ. No. 09-00165 SOM/LEK, ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO SEAL CERTAIN EVIDENCE; ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT